149 F.3d 156
 Bonnie CATONE, Plaintiff-Appellee,
v.
Gary L. SPIELMANN, individually and in his capacity as
Acting Executive Deputy Commissioner of the New
York State Department of Environmental
Conservation, Defendant-Appellant,
James Doe, individually and officially, Michael Roe,
individually and officially, Michael Doe, individually and
officially, George Roe, M.D., individually and officially,
and the State of New York, Defendants.
 No. 1178, Docket 97-7896.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 10, 1998.
Decided July 17, 1998.
 
 Lisa Le Cours, Assistant Attorney General, Albany, NY (Dennis C. Vacco, Attorney General of the State of New York, Peter Schiff, Deputy Solicitor General, Nancy A. Spiegel, Assistant Attorney General, of counsel), for Defendant-Appellant.
 Kim P. Berg, White Plains, NY (Jonathan Lovett, Lovett & Gould, of counsel), for Plaintiff-Appellee.
 Before: VAN GRAAFEILAND, JACOBS, and LAY,* Circuit Judges.
 JACOBS, Circuit Judge:
 
 
 1
 Plaintiff-appellee Bonnie Catone was hired in 1986 as a special assistant to the General Counsel of the New York State Department of Environmental Conservation ("DEC"), and was terminated soon after a change of gubernatorial administration in 1995. She brought suit in the United States District Court for the Northern District of New York alleging that the termination violated (i) her First Amendment right of free association and (ii) her Fourteenth Amendment right to due process.
 
 
 2
 Catone was terminated by defendant-appellant Gary Spielmann, who was appointed as DEC Executive Deputy Commissioner by incoming Governor George Pataki. Spielmann moved for summary judgment dismissing both claims on the ground of qualified immunity. The district court (McAvoy, Ch.J.) concluded that Spielmann enjoyed qualified immunity as to the First Amendment claim, but not as to the due process claim. Spielmann appeals the partial denial of his summary judgment motion. We conclude that because the district court's denial of qualified immunity rested on its determination that the question presented issues of material fact, we lack jurisdiction over an immediate appeal.
 
 BACKGROUND
 
 3
 Although the parties rigorously dispute the precise nature of Catone's duties, certain facts concerning her employment with the DEC and the circumstances of her termination are undisputed. Catone came to work at the DEC in 1986 as a special assistant in the General Counsel's office. She admits that she obtained this position in part through the National Democratic Party, which exercised its influence on her behalf.
 
 
 4
 Defendant-appellant Spielmann began working at DEC as a member of Pataki's transition team, and was officially appointed Executive Deputy Commissioner of the DEC in March 1995. Almost immediately, Spielmann and two other DEC officials undertook to develop a plan for the reorganization and reduction in size of the DEC. They took this step in part because they believed "there were far too many attorneys working at DEC, that they were much too aggressive in their demeanor and their philosophy ... and that they weren't getting the job done for all of the heavy handedness." (Spielmann Dep., at 22). In determining the contours of the reorganization, Spielmann considered "what talent was [at DEC] ... [and] what was the full range of appointment opportunities for the new administration." (Id. at 21). Spielmann testified that the new administration believed that many policy makers at DEC were too heavily invested in the policies of the previous governor to work effectively under new leadership. (Id. at 35).
 
 
 5
 Spielmann, working with two other members of the DEC's new management, Connie Barella and Gavin Donohue, decided to transfer the Legislative and Federal Liaison Unit, within which Catone worked, from the General Counsel's Office to the Office of the Assistant Commissioner for External Affairs. Spielmann further decided that Catone's position should be "abolished." (Id. at 42). Spielmann testified that he made this decision on his own and that at the time he made it, he was aware of Catone's status as a veteran. (Id. at 71).
 
 
 6
 On March 10, 1995, Catone received notification of Spielmann's decision, both in person and by letter. The letter stated:
 
 
 7
 I have been directed to formally notify you that your services as Special Assistant to General Counsel will no longer be required.
 
 
 8
 The effective date of your termination of employment will be the close of business today, March 10, 1995.
 
 
 9
 (Catone Aff., Exh. E). Six days later, however, Catone received a letter from Acting General Counsel Frank V. Bifera inviting her to reapply for her position. (Id., Exh. F). On March 22, 1995, Catone applied but was not rehired.
 
 
 10
 Catone's August 1995 complaint, pursuant to 42 U.S.C. § 1983, alleged that Spielmann (the only defendant who was actually served) violated her rights to free association and due process under the First and Fourteenth Amendments of the U.S. Constitution, and parallel provisions of the New York State Constitution.
 
 
 11
 Spielmann moved for summary judgment, asserting that he had not violated Catone's First and Fourteenth Amendment rights and that he was entitled to qualified immunity. The United States District Court for the Northern District of New York (McAvoy, Ch.J.) granted the motion in part and in part denied it. As to Catone's First Amendment claim, the district court ruled that although it was not entirely clear that Catone functioned as a policy maker and therefore did not enjoy constitutional protection from termination based on her political affiliation, Spielmann was entitled to qualified immunity. The portion of the district court's decision granting summary judgment on the First Amendment claim is not before us on this appeal.
 
 
 12
 The district court denied Spielmann's motion for summary judgment on Catone's due process claim. The court found that Catone had a property interest in continued employment as long as she held some position other than that of "deputy," as that job is defined under state law. Entry of summary judgment was held to be precluded, however, by open questions as to (1) whether Catone actually was a deputy; and (2) whether Spielmann (or any other reasonable officer) could reasonably have believed her to be a deputy, and thus eligible for termination without a hearing. It is this portion of the district court's ruling that Spielmann appeals.
 
 DISCUSSION
 
 13
 The denial of summary judgment ordinarily is an interlocutory order that is not immediately reviewable, because it is not a final decision under 28 U.S.C. § 1291. See, e.g., Connecticut Criminal Defense Lawyers Ass'n v. Forst (In re State Police Litigation), 88 F.3d 111, 123 (2d Cir.1996); Golino v. City of New Haven, 950 F.2d 864, 868 (2d Cir.1991). A limited exception is available for decisions rejecting a defense of qualified immunity, see Mitchell v. Forsyth, 472 U.S. 511, 524-30, 105 S.Ct. 2806, 2814-17, 86 L.Ed.2d 411 (1985), but such orders are immediately appealable under the collateral order doctrine solely to the extent that "the denial presents only 'a legal issue that can be decided with reference only to undisputed facts and in isolation from the remaining issues of the case.' " Marshall v. Sullivan, 105 F.3d 47, 53 (2d Cir.1996) (quoting Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995)); see also Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996). Thus, a defendant may not appeal a district court's summary judgment order--even one addressing the availability of a qualified immunity defense--" 'insofar as that order determines whether or not the pretrial record sets forth a "genuine" issue of fact for trial.' " Marshall, 105 F.3d at 53 (quoting Johnson, 515 U.S. at 318-320, 115 S.Ct. at 2159).
 
 
 14
 The appealability of a denial of qualified immunity at the summary judgment stage unfortunately has become a tangled question, depending on whether the district court's determination rests on a question of "evidence sufficiency." See Johnson, 115 S.Ct. at 2156. This Court has provided some guidance, however, by distilling from the Supreme Court's jurisprudence scenarios in which an immediate appeal is not available:
 
 
 15
 What we may not do, after Johnson and Behrens, is entertain an interlocutory appeal in which a defendant contends that the district court committed an error of law in ruling that a plaintiff's evidence was sufficient to create a jury issue on facts relevant to the defendant's immunity defense.
 
 
 16
 Salim v. Proulx, 93 F.3d 86, 91 (2d Cir.1996). Similarly, we have described the circumstances under which an immediate appeal will typically be appropriate:
 
 
 17
 An appeal is available, however, to challenge the trial judge's rejection of the immunity defense where the defendant contends that on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find, the immunity defense is established as a matter of law....
 
 
 18
 Id. We think it clear that the present case is more closely akin to those actions in which an immediate appeal has been held to be unavailable.
 
 
 19
 In determining what factual disputes the district court found to be preclusive of summary judgment, it is useful to review the applicable substantive law. The Fourteenth Amendment prohibits the discharge of a public employee with a property interest in continued employment in the absence of a pre-termination hearing. See O'Neill v. City of Auburn, 23 F.3d 685, 688 (2d Cir.1994); Dwyer v. Regan, 777 F.2d 825, 831 (2d Cir.1985), modified, 793 F.2d 457 (2d Cir.1986). "This circuit looks to New York Civil Service Law and the statutes which create a particular position or the authority to appoint or remove an individual to or from the position to determine whether a New York public employee has a property interest in his position requiring that he be afforded a hearing before termination." Todaro v. Norat, 112 F.3d 598, 600 (2d Cir.1997).[1] In Catone's case, the pertinent provision is Section 75(1)(b) of the New York Civil Service Law, which provides:
 
 
 20
 1. Removal and other disciplinary action. A person described in ... paragraph (b) ... shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section.
 
 
 21
 ...
 
 
 22
 (b) a person holding a position by permanent appointment ... who was honorably discharged or released under honorable circumstances from the armed forces of the United States having served therein as such member in time of war ... except when a person described in this paragraph holds the position of private secretary, cashier or deputy of any official or department....
 
 
 23
 N.Y. Civ. Serv. Law § 75(1)(b) (McKinney 1983 & Supp.1997) (emphasis added). Catone concededly is a veteran who served in wartime, and she did not receive a hearing prior to her termination. Thus, as the district court correctly noted, the issue of qualified immunity turns on the answers to the following questions: (1) was Catone a deputy; and (2) would a reasonable officer in Spielmann's shoes have believed Catone was a deputy. As to both these questions, the trial judge "reject[ed] ... defendant's contention that the plaintiff's evidence is insufficient to create a jury issue." Salim, 93 F.3d at 90; an immediate appeal is therefore inappropriate.
 
 
 24
 As to the question of whether plaintiff was a deputy, the district court noted that "the ultimate inquiry is whether plaintiff was 'invested with sufficient administrative powers so as to constitute [her]' a deputy in the exercise of administrative functions." Catone v. Spielmann, 966 F.Supp. 1288 (N.D.N.Y. 1997) (quoting Sullivan v. Superintendent of Ins., 103 A.D.2d 914, 478 N.Y.S.2d 153, 154 (3d Dep't 1984), aff'd, 64 N.Y.2d 1074, 489 N.Y.S.2d 904, 479 N.E.2d 249 (1985)). Spielmann presented numerous documents that he contended demonstrated that Catone represented the Commissioner in meetings with outside parties, performed high-level functions without recourse to higher authority, had policymaking responsibilities, and thus acted as a deputy. On the other hand, Catone submitted the affidavit of a Commissioner under whom she worked who stated that he never "explicitly or by implication, in theory or practice, authorized Catone to take over or perform any of [his] job duties or responsibilities, or any part thereof, as Commissioner." (Affidavit of Langdon Marsh, p 12). The district court relied on this conflict of evidence in denying summary judgment, quoting with approval the statement in Sullivan: "Our review of the[ ] job descriptions and other materials in the record convinces us that a question of fact exists on this issue." Sullivan, 478 N.Y.S.2d at 155.
 
 
 25
 Further, as the district court correctly concluded, the question of whether Spielmann reasonably believed Catone to be a deputy is inextricably intertwined with the question of whether Catone actually was a deputy. As a state official, Spielmann is presumed to know the law governing his conduct. See Frank v. Relin, 1 F.3d 1317, 1328 (2d Cir.1993) (citation omitted); Bieluch v. Sullivan, 999 F.2d 666, 670 (2d Cir.1993). Because we presume that Spielmann knew that he could not terminate Catone without a hearing unless she was a deputy, the critical question is whether the facts, as Spielmann knew them, would lead a reasonable official to conclude that Catone was a deputy. The conflicting evidence regarding whether Catone performed as a deputy therefore was central to the district court's denial of summary judgment on the ground of qualified immunity. We may not, at this preliminary stage, review a determination that rests on the existence of disputed facts.
 
 
 26
 We are not troubled by the fact, vigorously emphasized by Spielmann, that the district court did not expressly state that it was relying on a disputed issue of material fact. We have previously noted that "[s]imply declaring that genuine issues of fact exist is not sufficient, in and of itself, to prevent an appeal." Martinez v. City of Schenectady, 115 F.3d 111, 114 (2d Cir.1997). By the same token, the district court's failure to utter a formula of words is insufficient to confer appellate jurisdiction. Where, as here, the district court's denial of summary judgment rested on its assessment of the sufficiency of the evidence, immediate review is unavailable.
 
 CONCLUSION
 
 27
 We dismiss the appeal for lack of appellate jurisdiction.
 
 
 
 *
 Honorable Donald P. Lay, of the United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The relationship between Catone's state and federal claims is necessarily complex. She is barred by the Eleventh Amendment from suing state officials in federal court for a violation of state law. See Pennhurst State Schools & Hosp. v. Halderman, 465 U.S. 89, 120-21, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). Therefore, while Catone's claim in federal court can be based on the absence of notice and a hearing (assuming that she was entitled to due process protections), it cannot be based on a right to continued employment under the civil service law. The courts have long recognized that this type of federal claim is cognizable, although of course the damages stemming from such a claim may be limited. See Carey v. Piphus, 435 U.S. 247, 266, 98 S.Ct. 1042, 1053, 55 L.Ed.2d 252 (1978) (holding that if deprivation is justified, but procedures are deficient, an award of nominal damages compensates plaintiff for the loss of due process protections)