**Stanley R. GUFFEY, Plaintiff–Appellee,**

v.

**Eldridge WYATT, Officer, Defendant–Appellant.**

**No. 93–6071.**

United States Court of Appeals, Tenth Circuit.

March 9, 1994.

Robert E. Manchester (Stacey L. Haws with him on the briefs), Manchester, Hiltgen & Healy, Oklahoma City, Oklahoma, for Defendant–Appellant.

Brady R. Hunt, Brady R. Hunt & Associates, Inc., Midwest City, Oklahoma, for Plaintiff–Appellee.

Before MOORE, Circuit Judge, MCWILLIAMS, Senior Circuit Judge, and ROGERS, Senior District Judge.*

JOHN P. MOORE, Circuit Judge.

In this interlocutory appeal, Eldridge Wyatt, an officer with the Oklahoma City Police Department, seeks review of a Magistrate Judge's denial of his motion for summary judgment based on his qualified immunity from suit. Officer Wyatt contends the trial court erred in finding his alleged conduct violated clearly established law. Even if this court affirms the trial court's denial of his motion for summary judgment, Officer Wyatt maintains he must be permitted to raise the issue of qualified immunity during trial. Because triable issues of material fact are present precluding summary judgment on the issue of qualified immunity, we affirm. However, in the interest of judicial economy, we recommend the Magistrate Judge reconsider his ruling denying Officer Wyatt the opportunity to raise the issue of qualified immunity during trial.

We construe the facts set forth for our review in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On February 4, 1992, Officer Wyatt was employed by Douglass High School to provide security during the 1992 Oklahoma City Conference basketball championship. The two final teams, Douglass High School and Star Spencer High School, were fierce rivals, and the contest between them was vigorously fought. With only a few minutes left in the game, Officer Wyatt observed suspected gang members moving towards the court. Concluding the game's intensity might provoke a breach of order, Officer Wyatt approached the teams' coaches and asked them to calm the players. The coaches directed Officer Wyatt to Stanley R. Guffey, who was one of the game's referees.

Officer Wyatt advised Mr. Guffey that the overly-intense level of play on the court had inflamed the spectators and requested the referee "control the game so we can control the crowd." Following a heated exchange, Officer Wyatt ordered Mr. Guffey to start calling more fouls. In response, Mr. Guffey stated, "I don't know who you are, but you don't have any business out here on the floor." Officer Wyatt informed Mr. Guffey he was under arrest and escorted him into a separate room near the basketball court. After a brief period, Mr. Guffey returned and continued to officiate.

Mr. Guffey filed an action under 42 U.S.C. § 1983, maintaining Officer Wyatt's actions constituted an arrest without probable cause in violation of the Fourth Amendment.[1] In a motion for summary judgment, Officer Wyatt asserted a defense of qualified immunity. Finding the evidence before him sufficient to create a material dispute concerning the objective reasonableness of the officer's actions, the Magistrate Judge denied the defendant's

---

* Honorable Richard D. Rogers, Senior Judge for the United States District Court for the District of Kansas, sitting by designation.

1. Plaintiff's complaint also asserted First, Fifth, and Fourteenth Amendment claims. The trial court resolved these claims in favor of defendant.

motion for summary judgment and set the case for trial.[2] Despite his previous finding, during a pretrial hearing the Magistrate Judge ruled that he would not permit defendant to raise the issue of qualified immunity during trial.[3] Officer Wyatt appeals both of the rulings under 28 U.S.C. § 1291. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985).

## I.

We first examine the Magistrate Judge's order denying qualified immunity. "The presence or absence of qualified immunity is a question of law, which we review de novo." *Langley v. Adams County, Colo.*, 987 F.2d 1473, 1476 (10th Cir.1993).

■ As our jurisprudence makes clear, when a defendant raises qualified immunity, the burden shifts to the plaintiff to establish the defendant violated clearly established constitutional rights. *Hannula v. City of Lakewood*, 907 F.2d 129, 130–31 (10th Cir. 1990). Further, the Supreme Court mandates a plaintiff do more than simply allege abstract violations. Instead, a plaintiff is charged with making a particularized showing: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Finally, a plaintiff has to "demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Hannula*, 907 F.2d at 131.

■ As the Supreme Court articulated, this analysis "permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Once the plaintiff satisfies his burden, the defendant must then show "no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and the information the defendant possessed at the time of his actions." *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir.1991) (citations omitted).

■ With this analytical structure in mind, we first examine whether clearly established law prohibited Officer Wyatt's actions. Officer Wyatt argues he had probable cause to arrest because Mr. Guffey failed to obey a lawful request for assistance. Maintaining he reasonably believed a riot was imminent, Officer Wyatt contends Mr. Guffey's refusal to act impeded his ability to control the crowd and constituted obstruction under Oklahoma law.[4]

However, according to Mr. Guffey, neither the game nor the crowd was particularly unruly. Indeed, Mr. Guffey likens Officer Wyatt's behavior to that of an "irate fan," rather than of a police officer. Mr. Guffey maintains Officer Wyatt never requested assistance; he simply directed plaintiff to start "calling more fouls." Finally, Mr. Guffey asserts, when he responded to defendant's request by saying "you don't have any business out here on the floor," Officer Wyatt promptly arrested him.

In determining whether the law was clearly established at the time of the incident, we are mindful the Supreme Court has repeatedly vitiated statutes providing the police with unfettered discretion to arrest individuals for words or conduct an officer finds offensive. *See City of Houston, Tex. v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987); *Lewis v. City of New Orleans*, 415

---

**2.** The parties stipulated to trial before the Magistrate Judge. 28 U.S.C. § 636(c).

**3.** Specifically, the Magistrate Judge stated: "There is no qualified immunity issue.... I denied qualified immunity. And I assume by going to trial under these circumstances, you're waiving any appeal rights you might have for the qualified immunity issue."

**4.** Okla.Stat.Ann. tit. 21, § 540 (West 1983) states: "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor."

U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974); *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972). Indeed, the *Houston* Court noted: "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.... The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." 482 U.S. at 461–63, 107 S.Ct. at 2509–10. While Mr. Guffey's words may have irked Officer Wyatt, the defendant "may not exercise the awesome power at [his] disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment." *Duran v. City of Douglas, Ariz.,* 904 F.2d 1372, 1378 (9th Cir.1990); *see also Enlow v. Tishomingo County, Miss.,* 962 F.2d 501, 509 (5th Cir.1992); *Buffkins v. City of Omaha,* 922 F.2d 465, 472 (8th Cir.1990), *cert. denied,* — U.S. —, 112 S.Ct. 273, 116 L.Ed.2d 225 (1991).[5]

Nevertheless, Officer Wyatt relies on two cases upholding convictions under the Oklahoma statute, maintaining these decisions could have led a reasonable officer to believe Mr. Guffey's comments constituted obstruction. In *Marsh v. State,* 761 P.2d 915 (Okla. Crim.App.1988), an Oklahoma court upheld a conviction under the obstruction statute where the defendant had given false statements to an investigating officer. One year later, in *Trent v. State,* 777 P.2d 401 (Okla. Crim.App.1989), the court affirmed a conviction where it found the defendant had "harassed" and "hindered" an officer, frustrating his attempts to remove a vehicle from the road and delaying a blood alcohol test. Defendant suggests the very existence of these cases belies the argument the law was clearly established at the time of the incident.

While defendant contends that state decisional law is relevant to the qualified immunity inquiry, the role of state law remains unsettled. *See, e.g., Ward v. County of San Diego,* 791 F.2d 1329, 1333 (9th Cir.1986), *cert. denied,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987) ("the pronouncement of one state court on a constitutional issue does not necessarily shield a government official from liability.... [particularly] [i]n light of contrary authority from the federal courts...."); *Washington v. Starke,* 855 F.2d 346, 348 (6th Cir.1988) ("controlling precedent in this circuit and in Michigan courts" upholding fleeing felon rule did not bar finding of qualified immunity because reasonable officer would have believed use of deadly force was lawful). Nonetheless, we note because state courts seldom examine federal constitutional claims, few federal courts have found state decisional law to be dispositive. *See* Richard B. Saphire, *Qualified Immunity in Section 1983 Cases and the Role of State Decisional Law,* 35 Ariz.L.Rev. 621 (1993).

In this case, we need not consider the role of state decisional law in the qualified immunity analysis. First, neither Oklahoma case purports to interpret federal constitutional law; the decisions simply explore the reach of a state statute. Second, the cases are factually distinguishable from the instant situation.

Nevertheless, defendant insists that the two cases stand for the proposition that the Oklahoma statute may be violated by words alone. While words may indeed violate the statute, the nature of the utterances remains critical to the constitutional analysis. *See Garcia By Garcia v. Miera,* 817 F.2d 650, 657 (10th Cir.1987) (officers must relate established law to consonant factual settings), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). Accordingly, in the face of Supreme Court precedent articulating substantive constitutional rights, the defendant's claim these two Oklahoma cases somehow obscured otherwise clearly established law is simply not persuasive.

Probable cause to arrest "exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe the arrestee has committed or is committing an offense." *Jones v. City and County of Den-*

---

**5.** Of course, words which "by their very utterance inflict injury or tend to incite immediate breach of peace" do not invoke the protection of the First Amendment. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942).

 

*ver, Colo.,* 854 F.2d 1206, 1210 (10th Cir.1988) (citations omitted). If, as Mr. Guffey asserts, a finder of fact concludes Officer Wyatt arrested him merely because plaintiff refused to "call more fouls," the law is clear defendant acted without probable cause to make the arrest.

In our view, the Magistrate Judge properly concluded material issues of fact precluded defendant's motion for summary judgment. Plaintiff and defendant offered conflicting evidence concerning the nature of their conversation, particularly, whether Mr. Guffey failed to obey a direct call for assistance. Additionally, the parties dispute the game's level of play and its corresponding effect on the bystanders. As defendant's claim of qualified immunity remains inextricably bound to disputed factual issues, we affirm the Magistrate Judge's order denying summary judgment.

## II.

We turn to the Magistrate Judge's order denying Officer Wyatt the opportunity to raise qualified immunity at trial. Although we have jurisdiction to review the Magistrate Judge's order denying defendant summary judgment, this second ruling is not properly before us because it does not constitute a final judgment under 28 U.S.C. § 1291. Yet, in the interest of judicial economy, we believe it proper to lend some thoughts to the trial court.

Despite the prior ruling that triable issues of fact precluded summary judgment for the defendant, the Magistrate Judge later stated he would not permit the defendant to raise qualified immunity during trial.[6] In so ruling the Magistrate Judge overlooked the fact that the doctrine of qualified immunity shields a defendant both from trial *and* from damages.

In *Apostol v. Gallion,* 870 F.2d 1335, 1339 (7th Cir.1989), the Seventh Circuit noted,

"the right not to pay damages and the right to avoid trial are distinct aspects of immunity...." While defendant has lost his right not to stand trial, the law is clear the officer can "reassert [his] qualified immunity claims at and after trial when the factual disputes have been resolved." *Dixon v. Richer,* 922 F.2d 1456, 1463 (10th Cir.1991); *see also Figueroa–Rodriguez v. Aquino,* 863 F.2d 1037, 1041 n. 5 (1st Cir.1988) ("A defendant who has appropriately pleaded the affirmative defense of qualified immunity may establish his right to immunity at any point in the proceeding, including at trial.").[7]

If a plaintiff alleges a police officer has used excessive force in violation of the Fourth Amendment, the qualified immunity inquiry becomes indistinguishable from the merits of the underlying action. In contrast, Mr. Guffey does not claim Officer Wyatt used excessive force, but that defendant had no probable cause to arrest him. Even if defendant's conduct proves unreasonable under the Fourth Amendment, it "may nevertheless be objectively reasonable for purposes of qualified immunity." *Dixon,* 922 F.2d at 1463. In this case, the doctrine of qualified immunity leaves "ample room for mistaken judgments." *Malley v. Briggs,* 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986).

We therefore recommend the Magistrate Judge reconsider his ruling refusing to allow the defendant to raise qualified immunity during trial. Defendant also asks we instruct the trial court to permit the jury to consider the issue of qualified immunity. We deem this portion of the appeal premature and decline to address it.

**AFFIRMED** and **REMANDED** with directions.

---

6. Neither party offers a satisfactory explanation for the contradictory ruling. We note that the unsigned pretrial order included qualified immunity as an issue to be resolved at trial.

7. We also note, contrary to the Magistrate Judge's apparent notion, even if defendant chose

not to take an interlocutory appeal, he would not lose his right to raise qualified immunity on direct appeal following trial. *Apostol v. Gallion,* 870 F.2d 1335, 1339 (7th Cir.1989) (citations omitted).