**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 16 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIE BROWN and ANNA DUNLAP,

    Plaintiffs-Appellants,

v.

CITY OF BELEN, SERGEANT MIKE
CHAVEZ, City of Belen Police Officer,

    Defendants-Appellees.

No. 97-2139
(D.C. No. CV-96-533 BB/RLP)
(DISTRICT OF NEW MEXICO)

---

**ORDER AND JUDGMENT**[*]

---

Before **EBEL,** Circuit Judge, **MURPHY**, Circuit Judge, and **MCWILLIAMS**, Senior
Circuit Judge.

---

After examining the briefs and the appellate record, this three-judge panel has
determined unanimously that oral argument would not be of material assistance in the
determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The cause is
therefore ordered submitted without oral argument.

Pursuant to 42 U.S.C. § 1983, Willie Brown and Anna Dunlap brought a civil

rights action in the United States District Court for the District of New Mexico against the

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

City of Belen ("City") and Sergeant Mike Chavez, a police officer for the City. The gist of the complaint was that Sergeant Chavez, while acting within the scope of his employment as a policeman for the City, entered the plaintiffs' home in Belen, New Mexico without their consent, without a warrant, and without exigent circumstances which might possibly justify a warrantless entry into their home. According to the complaint, Sergeant Chavez entered their home with his gun drawn and pointed it at the plaintiffs prior to asking them to identify themselves. After identifying themselves, Sergeant Chavez left the premises, according to the complaint, "without any explanation as to his reason for entry."

Count one of the complaint was against Sergeant Chavez only, and was based on 42 U.S.C. § 1983. Plaintiffs alleged that, as a result of Sergeant Chavez' actions, they had both suffered "significant psychological injuries." Plaintiffs also asserted a claim against the City based on the New Mexico Tort Claims Act. Under that Act, according to the complaint, the City is "directly liable for defendant Chavez' deprivation of plaintiffs' federal constitutional rights when done in the scope of defendant Chavez' employment."

The defendants filed an answer to the plaintiffs' complaint, denying, *inter alia,* the allegation that there were "no exigent circumstances justifying the entry" and affirmatively alleged that, in any event, Sergeant Chavez was entitled to qualified immunity. Discovery ensued, whereupon the defendants filed a joint motion for summary judgment. The thrust of that motion was that "exigent circumstances" did justify the

warrantless entry into plaintiffs' home, but that even if there were a "technical violation" of the plaintiffs' Fourth Amendment rights, Sergeant Chavez was entitled to qualified immunity, which would shield both him and the City from suit or liability under 42 U.S.C. § 1983. After hearing, the district court granted the defendants' motion for summary judgment, holding that Sergeant Chavez was entitled to qualified immunity which shielded both him and the City from suit. Plaintiffs appeal. We affirm.

The record before the district court at the hearing on the defendants' motion for summary judgment included affidavits and depositions of both plaintiffs, as well as those of Sergeant Chavez and his fellow officer, Detective Gilbert Zamora. From that we learn that on the day in question Sergeant Chavez was on duty as a policeman for the City when the police dispatcher sent out a call of a possible "domestic disturbance" at 1609 West Gilbert, which had been reported on the 911 line by a neighbor, and that it was unknown whether there were weapons involved. Sergeant Chavez, who was at the time on "solo" duty, proceeded at once to 1609 West Gilbert, arriving at about the same time as a fellow officer, Detective Zamora. In his affidavit, Sergeant Chavez stated that, as he approached the residence at 1609 West Gilbert, he heard "a woman yell like she was being hurt." In his deposition, Sergeant Chavez testified that as he approached the premises of 1609 West Gilbert he "heard a woman yelling" and didn't "know if she was being hurt inside." In his deposition, Detective Zamora stated he heard "yelling" by a female coming from the residence at 1609 West Gilbert.

In her affidavit, plaintiff Anna Dunlap stated that on the afternoon in question, she and her husband, plaintiff Willie Brown, and her son were "playing ball in the kitchen of our home in Belen and laughing," but at no time was she "yelling." In a written statement to the police, Willie Brown stated that he and his wife and her son had been "playing a game in the house with a rubber ball, [and were] yelling and laughing."

In his affidavit and deposition, Sergeant Chavez also stated that after hearing a woman yell from inside the residence at 1609 West Gilbert, he also noticed a "male subject move quickly across the room that was in front of the house" and thought that the "man in the house had spotted [the officers] coming up the walk".

Such, then, was the general setting when Sergeant Chavez and Detective Zamora entered the premises at 1609 West Gilbert without a warrant. As entering, Sergeant Chavez removed his gun from his holster. Sergeant Chavez inquired as to what was going on, to which Anna Dunlap was said to have replied, "We're playing. Can't anybody even play in their house anymore?" After ascertaining that no one had been hurt, or was about to be harmed, the officers asked for identification. While inside the residence, the officers did not touch any person or thing. After satisfying themselves that no one was in danger, the officers left, having been inside the residence but a short time.

As indicated, the district court granted the defendants' motion for summary judgment, concluding that Sergeant Chavez was entitled to qualified immunity which shielded both him and the City from suit or liability to the plaintiffs. We agree.

The doctrine of qualified immunity for government officials performing discretionary duties has its modern origin in *Harlow v. Fitzgerald,* 457 U.S. 800 (1982), where the Supreme Court spoke as follows:

> Consistently with the balance at which we aimed in *Butz,* we conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Procunier v. Navarette,* 434 U.S. 555, 565 (1978); *Wood v. Strickland,* 420 U.S. at 322.

*Harlow,* 457 U.S. at 817-18.

Concerning the doctrine of qualified immunity for government officials, the Supreme Court in *Anderson v. Creighton,* 483 U.S. 635 (1986) went on to speak as follows:

> When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." *Harlow v. Fitzgerald,* 457 U.S., at 814, 1025, S.Ct. at 2736. On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties. *Ibid.* Our cases have accommodated these conflicting concerns by generally providing government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.

*Anderson,* 483 U.S. at 638.

And in *Malley v. Briggs,* 475 U.S. 335, (1985), the Supreme Court said:

> As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law. At common law, in cases where probable cause to arrest was lacking, a complaining witness' immunity turned on the issue of malice, which was a jury question. Under the *Harlow* standard, on the other hand, an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner. The *Harlow* standard is specifically designed to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment," and we believe it sufficiently serves this goal.

*Malley,* 475 U.S. at 341.

We have held that a motion for a summary judgment in a civil rights action differs from the normal motion for summary judgment. In this particular connection, we spoke in *Jantz v. Muci,* 976 F.2d 623, 627 (10th Cir. 1992), *cert. denied* 508 U.S. 592 (1993) as follows:

> Qualified immunity differs from other affirmative defenses in that it protects the defendant from the burdens associated with trial as well as from personal liability. Therefore, our review of the district court's summary judgment determination differs from the norm. A defendant government official need only raise the qualified immunity defense to shift the summary judgment burden to the plaintiff. This burden is quite heavy for the plaintiff must do more than simply allege the violation of a general legal precept. The plaintiff must instead demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were

clearly prohibited. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Clearly this standard does not require a precise factual analogy to pre-existing law; however, the plaintiff must demonstrate that the unlawfulness of the conduct was apparent in the light of pre-existing law. Once the plaintiff meets his burden of coming forward with facts or allegations which demonstrate that the defendant's alleged violation should have been apparent in light of pre-existing law, the defendant assumes the normal burden of a movant for summary judgment of establishing that no material facts remain in dispute that would defeat her or his claim of qualified immunity. (internal quotations and citations omitted).

*Jantz,* 976 F.2d at 627.

Under the authorities above cited, we conclude that the district court did not err in granting the defendants' motion for summary judgment. Under *Harlow*, Sergeant Chavez, a government official who was performing discretionary functions, was shielded from plaintiffs' 42 U.S.C. § 1983 civil action if his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. Under the facts and circumstances of the case, Sergeant Chavez, as a reasonable person, would not have known that by entering plaintiffs' residence, believing that there was some sort of crisis going on therein, he was violating clearly established rights of the plaintiffs.

Under *Anderson*, Sergeant Chavez, a government official performing discretionary functions, had qualified immunity, shielding him from an action of the present type, as long as his actions could reasonably have been thought to be consistent with the rights he

was alleged to have violated.

In *Malley,* the Supreme Court stated that the qualified immunity granted government officials performing discretionary functions "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley,* 475 U.S. at 341. Certainly Sergeant Chavez was neither "plainly incompetent" nor did he "knowingly violate the law" when he entered plaintiffs' residence without knocking when he believed there was an emergency requiring instant action.

Having concluded that the district court did not err in granting defendants' motion for summary judgment based on the qualified immunity granted Sergeant Chavez, and inuring to the benefit of the City, we need not here concern ourselves with the question of whether there actually were "exigent circumstances" which created an exception to the right of the plaintiffs to be free from a warrantless entry into their home. Although "exigent circumstances" and "qualified immunity" may be related, they are not necessarily one and the same. In *Guffey v. Wyatt,* 18 F.3d 869 (10th Cir. 1994), we stated that "[e]ven if defendant's conduct proves unreasonable under the Fourth Amendment, it 'may nevertheless be objectively reasonable for purposes of qualified immunity'." *Id.* at 873 (citing *Dixon v. Richer,* 922 F.2d 1456, 1463 (10th Cir. 1991)). We then went on to say, in *Guffey,* that the "doctrine of qualified immunity leaves 'ample room for mistaken judgments'." *Id.* (citing *Malley v. Briggs,* 475 U.S. 335, 343 (1986)).

Judgment affirmed.

ENTERED FOR THE COURT,


Robert H. McWilliams
Senior Circuit Judge